IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 21-277 |
| | : | |
| ZYAIR DANGERFIELD-HILL | : | |

**Diamond, J.**                                                                                         **April 17, 2025**

## MEMORANDUM OPINION

Charged with carjacking and a weapons offense, Defendant Zyair Dangerfield-Hill seeks to represent himself at his upcoming trial. Dangerfield-Hill is competent to stand trial, although he has given up his right to challenge his competence by repeatedly coming to Court drug-intoxicated. The apparent availability of illegal drugs to Dangerfield-Hill (and, presumably, to other inmates) at local federal and state prisons is a serious problem the Court cannot remedy. A detained prisoner's continual intoxication—an obvious effort to delay trial indefinitely—is a serious problem the Court can address. Because Dangerfield-Hill chooses to appear in Court under the influence, I will order this matter to trial, but will not allow him to represent himself. Although I find that he is competent to stand trial, I also find that he is not competent to proceed pro se.

**I.     BACKGROUND**

During the April 3, 2025 status conference in this matter, I said that I would issue this Memorandum to explain more fully both my rulings and this matter's tortured history. (Doc. No. 227 at 2.)

The first period of delay in this case was caused by the pandemic. On July 14, 2021—when COVID restrictions were still in place—the grand jury indicted Dangerfield-Hill based on

1

his alleged involvement in a West Philadelphia armed carjacking earlier that year. (Doc. No. 1.) Represented by the Federal Defender, he sought a continuance three times, and then moved to suppress. (Doc. Nos. 12, 19, 24, 29.) In light of the COVID-related impediments making it difficult for lawyers to meet or even speak with detained clients, I granted the Defendant's three continuance requests. See Advisory Group of DOJ Components, Report and Recommendations Concerning Access to Counsel at the Federal Bureau of Prisons' Pretrial Facilities 19 (July 20, 2023). I continued trial once more to hold a suppression hearing and denied the motion on September 19, 2022. (Doc. Nos. 41, 56, 57.) I granted Dangerfield-Hill's subsequent continuance request to allow him more time to review discovery. (Doc. No. 59.)

On January 12, 2023, Dangerfield-Hill stated that he wanted a new lawyer, and the Defender agreed he should have one. (Doc. No. 67.) I held a status of counsel hearing and granted Dangerfield-Hill's request. (Id.) I once again continued the trial to allow newly appointed counsel, Jeremy Ibrahim, time to prepare.

For the next two years, Dangerfield-Hill repeatedly delayed trial by claiming symptoms of mental illness and then by using illicit drugs. On March 31, 2023, after Dangerfield-Hill told his lawyer that he was hearing voices, Mr. Ibrahim moved for a comprehensive psychological examination. (Doc. No. 73.) On April 11, 2023, I granted the Motion and ordered an evaluation of Dangerfield-Hill's competency. (Doc. No. 81.) On August 7, 2023, I received a report from Bureau of Prisons Forensic Psychologist Dr. Leslie Johnson, who concluded:

> Based on the information available, there is objective evidence to indicate Mr. Dangerfield-Hill does suffer from a mental disorder, specifically, generalized anxiety disorder, antisocial personality disorder, adjustment disorder, and substance use disorders. However, they do not currently impair his ability to understand the nature and consequences of the court proceedings against him. Further, they do not impair his current ability to properly assist counsel in his defense. Mr. Dangerfield-Hill appears to have the necessary skills to appraise his behavior, and converse in a logical manner, both of which are necessary to properly

>assist counsel in a defense. He was able to attend and concentrate for long periods of time, and he demonstrated the capacity to logically and coherently converse about basic aspects of his case.

(Doc. No. 160 at 13). Dr. Johnson also stated that Dangerfield-Hill had acknowledged abusing drugs while at the Philadelphia Federal Detention Center, including marijuana, Percocet, Xanax, and suboxone (an opioid often prescribed in small doses to treat addiction, but one that can also cause intoxication if taken in non-therapeutic doses). (Doc. No. 160 at 6.) She noted Dangerfield-Hill was taking three prescribed psychotropic medications and explained the importance of him continuing to take those medicines and avoiding illegal drugs. (Id. at 6, 11-12.)

On August 22, 2023, Dangerfield-Hill submitted a letter request to proceed pro se. (Doc. No. 92). On August 30, 2023, I held a status hearing. With the agreement of both Parties, I noted that Dangerfield-Hill had been found competent and conducted the prescribed colloquy pursuant to United States v. Peppers, 302 F.3d 120, 135-37 (3d Cir. 2002). Dangerfield-Hill confirmed his wish to proceed pro se, his understanding of the risks involved, and his responsibilities in proceeding without counsel. (Doc. No. 101 at 11.) I found that Dangerfield-Hill knowingly and voluntarily waived his right to counsel. (Id.)

During the hearing, Dangerfield-Hill also renewed his counsel's earlier motion to continue trial and related deadlines. (Id.) Explaining that "we're not continuing this case into 2030," I granted his request to proceed pro se and his renewed motion to continue trial. (Id. at 15.) I appointed Mr. Ibrahim as standby counsel. (Id.)

After again cautioning that "we're not continuing [trial] forever," I granted three brief continuance requests from Dangerfield-Hill to allow him time to prepare pretrial motions. (Doc. Nos. 101, 111, 119, 126.) With trial listed for February 6, 2024, Dangerfield-Hill filed nineteen

3

pro se pretrial motions, which I decided before the final pretrial conference set for February 1, 2024. (Doc. Nos. 104-108, 113-114, 127-132, 138-143, 145, 146, 150, 152, 154.)

On January 26, 2024, Mr. Ibrahim reported that, at a "reverse proffer" session with the Government, Dangerfield-Hill said both that he was hearing voices and that he was concerned that he would have an anxiety attack during trial. (Doc. No. 151). On January 30, 2024, Mr. Ibrahim reported that Dangerfield-Hill had not taken his medications "in about four months." (Doc. No. 159.) On February 1, 2024, at what was supposed to be a final pretrial conference, I informed Dangerfield-Hill that at the urging of the Government and Mr. Ibrahim, I would order a second competency evaluation. (Doc. No. 164.) Dr. Johnson evaluated Dangerfield-Hill for a second time, and she found Dangerfield-Hill to be competent (even though he had stopped taking his prescribed medications). (Doc No. 169 at 10.)

On September 19, 2024, I held a competency hearing, during which Dangerfield-Hill and I had the following discussion:

> THE COURT: When was the last time you took any illegal drugs while in the detention center?
>
> THE DEFENDANT: This morning.
>
> THE COURT: I'm sorry?
>
> THE DEFENDANT: This morning.
>
> THE COURT: This morning?
>
> THE DEFENDANT: Yes.
>
> THE COURT: What did you take?
>
> THE DEFENDANT: Suboxone.

4

(Doc. No. 196 at 6.) With the prosecutor's concurrence, I found that Dangerfield-Hill was plainly intoxicated throughout the hearing. (Doc. No. 196 at 8.)

At Dangerfield-Hill's request, I ordered the Bureau of Prisons to admit him immediately into the Medically-Assisted Treatment Program, which could help him stop abusing drugs. (Doc. No. 179.) I also ordered the Bureau of Prisons to drug test Dangerfield-Hill regularly, including before any Court appearance. (Id.) I asked the prosecutor to inform the U.S. Attorney and the Chief of the Office's Criminal Division of my grave concern that a defendant detained at the FDC could obtain illicit drugs. (Doc. No. 196 at 21.) As I informed the Parties I would, I spoke with the Chief of the Criminal Division and the FDC's Warden about Dangerfield-Hill's access to drugs. Dangerfield-Hill was placed in segregated housing, where it was thought (incorrectly) that he would not have access to drugs.

On October 3, 2024, the Government informed me that Dangerfield-Hill continued to test positive for synthetic opioids. He thus was not admitted into the MAT program because he could not remain drug free for at least seven days, as the program required. (Doc. No. 184.) On January 6, 2025, in advance of a status hearing scheduled for the following day, the Government informed me that Dangerfield-Hill had continued to test positive for opioids and was refusing to participate in the MAT Program, which was prepared to admit him, his continued drug use notwithstanding. (Doc. No. 190.)

On January 7, 2025, Dangerfield-Hill again failed a drug test taken before the status hearing. (Doc. No. 192.) He told Pretrial Services that he had used illicit suboxone in the past week. (Id.) At the hearing, I found that Dangerfield-Hill once again was visibly intoxicated. I explained I was concerned that he might not have been sober when he elected to proceed pro se. (Doc. No. 197 at 7.) Given his continual intoxication, I did not know whether Dangerfield-Hill

5

was able to decide competently whether he wished to continue to represent himself. (Id.) Accordingly, I vacated my August 30, 2023 Order and reappointed Mr. Ibrahim to serve as counsel until I could satisfy myself that Dangerfield-Hill was sober, when I would conduct another Peppers colloquy. (Doc. No. 199.)

Following this hearing, in an attempt to make drugs unavailable to Dangerfield-Hill, the Marshals Service transferred him from the FDC to Curran-Fromhold Correctional Facility—a state institution. (Doc. No. 200.)

On January 23, 2025, Dangerfield-Hill again tested positive for opioids before a status hearing. (Doc. No. 226-2). He told Pretrial Services that he had been prescribed the opioid-addiction drug Subutex as part of a CFCF treatment program. (Id.) His CFCF medical records confirmed this. (Doc. No. 226.) At the hearing, Pretrial Services Officer Foster testified that Dangerfield-Hill "communicated clearly, had clear eyes, appeared in every single way that I can tell sober and not struggling with any type of intoxication or other issue that may be caused by illegal drug use or the medication having an overwhelming effect on him." (Doc. No. 213 at 3.) Mr. Ibrahim agreed with this assessment. (Id. at 3-4.) When I asked Dangerfield-Hill how he was feeling, he replied "I'm feeling good . . . Sober." (Id.) I noted: "[Y]ou're obviously clear eyed and you're obviously sober. And it's a big change from the last few times I've seen you." (Id. at 8.) I informed Dangerfield-Hill, while he was sober, that I would not permit him to delay the proceedings any further by taking drugs. (Id. at 5.) When I was about to conduct a second Peppers colloquy, Mr. Ibrahim asked me to allow him to continue to serve as counsel and meet with Dangerfield-Hill at CFCF to discuss a possible guilty plea:

> MR. IBRAHIM: I will scurry up to CFCF . . . . [s]o that I [can] explain[] to him [that] as his lawyer, I can still have discussions with the Government to see whether or not we could resolve it. If I'm not his lawyer, that hamstrings that significantly.

6

(Doc. No. 213 at 6.) Dangerfield-Hill agreed to this request, which I granted. (Id. at 7.) I then set a status hearing in February to allow Mr. Ibrahim time to consult with Dangerfield-Hill at CFCF. (Id. at 8.) The day before the hearing, the BOP returned Dangerfield-Hill to the FDC, from which he could be securely transferred to the Courthouse. On the morning of the February 19, 2025 hearing, Dangerfield-Hill again tested positive for opioids. (Doc. No. 204.) This time, however, he was not on any prescription medication. (Id.) At the hearing's outset, Mr. Ibrahim reported that Dangerfield-Hill "has been candid with me in acknowledging . . . that he has relapsed." (Doc. No. 212 at 8.) In speaking with Dangerfield-Hill, who was slurring his words and appeared to be struggling to stay awake, I concluded:

> Sir, you're obviously high. You're feeling the effects of drugs . . . [T]he difference between you today and at the last [hearing] is night and day. You're obviously high.

(Doc. No. 212 at 4-5.) Following the hearing, the Government, Defense Counsel, and the Marshals collaborated to ensure Dangerfield-Hill was returned to CFCF, where it was again hoped (again, incorrectly) that drugs would not be readily available. (Doc. No. 206-1.)

In accordance with my January 23, 2025 admonition to a sober Dangerfield-Hill, I set a trial date of April 21, 2025. (Doc. No. 208.) Given Dangerfield-Hill's disturbing conduct, I also considered whether, under Indiana v. Edwards, I was obligated to allow Dangerfield-Hill to represent himself. 554 U.S. 164, 177-78 (2008). Accordingly, on March 19, 2025, I ordered the Parties to brief the question. (Doc. No. 209.)

In his brief, Mr. Ibrahim informed me that Dangerfield-Hill again wished to represent himself. (Doc. No. 210 at 1.) Mr. Ibrahim also moved to continue the trial, which the Government

7

opposed. (Doc. Nos. 221, 222.) The Government urged that although competent to stand trial, Dangerfield-Hill was not competent to represent himself. (Doc. No. 218.)

I held a status hearing on April 3, 2025. Although he had been incarcerated at CFCF, Dangerfield-Hill was able to obtain drugs there. He once again tested positive on the morning of the hearing and confirmed that he had been using Suboxone without a prescription. (Doc. No. 224-1.) I found that Dangerfield-Hill was "obviously high again," which he did not dispute. (Doc. No. 227 at 2.) I further stated:

> Mr. Dangerfield-Hill, you're hurting no one but yourself. You are too intoxicated to represent yourself. And you're obviously trying to prevent trial. You've done this now for months and months and I'm not going to let you continue to do it.
>
> We're going to go to trial.

(Doc. No. 227 at 5.)

## II.   LEGAL STANDARDS

"A defendant is competent to stand trial if (1) the defendant has the 'present ability to consult with [defense counsel] with a reasonable degree of rational understanding' and (2) the defendant has a 'rational as well as factual understanding of the proceedings.'" United States v. Leggett, 162 F.3d 237, 242 (3d Cir. 1998) (quoting Drope v. Missouri, 420 U.S. 162, 171 (1975)). In determining whether a defendant satisfies this two-prong test, I must consider, inter alia: "evidence of a defendant's irrational behavior, [the defendant's] demeanor at trial, and any prior medical opinion on competence to stand trial." Id.

The Sixth Amendment gives criminal defendants the right to represent themselves. U.S. Const. Amend. VI; Faretta v. California, 422 U.S. 806, 819 (1975). When a defendant seeks to proceed pro se, the Court must conduct a "thorough inquiry" to ensure that he understands the consequences of waiving the right to counsel. See United States v. Peppers, 302 F.3d 120, 132-

33 (3d Cir. 2002). "The right to represent oneself is not absolute, however; judges 'may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct.'" United States v. Noble, 42 F.4th 346, 350 (3d Cir. 2022) (quoting Faretta, 422 U.S. at 832 n.46.)

## III. DISCUSSION

I have continued trial in this case twelve times—almost all at Dangerfield-Hill's request—over some four years. (Doc. Nos. 15, 22, 27, 42, 62, 70, 88, 100, 112, 122, 135, 207.) I have also twice delayed this case so that Dangerfield-Hill's competency could be evaluated. Both times, BOP forensic psychologist Dr. Johnson found him to be competent to stand trial. For some two years, Dangerfield-Hill appeared in Court sober. Over the last eight months—since he was found competent for the second time—I have held six status hearings. Dangerfield-Hill has chosen to show up intoxicated to five of them, including the April 3, 2025 hearing, only 18 days before trial is set to begin. As Dr. Johnson has concluded, even when intoxicated, Dangerfield-Hill has a rational understanding of the proceedings and is able to assist in his own defense. He refuses to appear in Court sober in most instances, however. Accordingly, as I stated on April 3rd, I find that he is competent to stand trial, but not competent to conduct trial proceedings unless represented by counsel.

### A. Competency to Stand Trial

I most recently ordered Dangerfield-Hill's competency evaluated on February 1, 2024, after he said he was hearing voices. In her June 3, 2024 competency evaluation, Dr. Johnson reported that: "Mr. Dangerfield-Hill admitted to telling his attorney he was hearing voices, but he also acknowledged he was using substances (i.e., suboxone) at that time." (Doc. No. 169 at 9.) Accordingly, on July 24, 2024, I ordered Dr. Johnson to submit a supplemental report addressing,

inter alia, "what effect, if any, Dangerfield-Hill's illicit drug use at the FDC Philadelphia has on his competency to stand trial." (Doc. No. 168.) The next day, Dr. Johnson reported:

> Using illicit substances alone does not satisfy the mental disease or defect prong for competency to stand trial. Should Mr. Dangerfield-Hill choose to engage in illicit substance use, his ability to think clearly may be adversely impacted. However, the act of using illicit substances is volitional, in nature, and not rooted in mental illness. He demonstrated the ability to refrain from using illicit substances at FDC Houston [where Dr. Johnson was located], and therefore any use at FDC Philadelphia would be considered a choice and not a product of a severe mental disease or defect.

(Doc. No. 170.)

> Dr. Johnson also noted:
>
> Based on the information available, there is objective evidence to indicate Mr. Dangerfield-Hill does suffer from a mental disorder, specifically, generalized anxiety disorder, adjustment disorder, antisocial personality disorder, and substance use disorders . . . . Further, they do not impair his current ability to properly assist counsel in his defense.
>
> Mr. Dangerfield-Hill appears to have the necessary skills to appraise his behavior, and converse in a logical manner, both of which are necessary to properly assist counsel in a defense. He was able to attend and concentrate for long periods of time, and he demonstrated the capacity to logically and coherently converse about basic aspects of his case. During the competency portion of the evaluation, he provided appropriate responses to all of the questions posed to him and did not appear to experience any difficulties in communicating his thoughts.

(Doc. No. 169 at 10).

Courts have long held that drug use "does not per se render a defendant incompetent to stand trial. The use of drugs is merely a relevant factor in the trial judge's determination." United States v. Oliver, 626 F.2d 254, 259 (2d Cir. 1980). Although the Third Circuit "has said little on the topic of a defendant's drug use during trial," Courts have found defendants (who were not detained) competent to stand trial even when they appeared to be under the influence during court proceedings. See United States v. Riddick, 15 F. Supp. 2d 673, 676-79 (E.D. Pa. 1998) ("[N]o evidence that [the defendant] was in any way incompetent" when he contended he was high on

drugs and alcohol during both his trial and sentencing); see also Watts v. Singletary, 87 F.3d 1282 (11th Cir. 1996) (upholding competency finding where defendant "slept through much of his trial as a result of smoking crack at night"); United States v. Kearn, No. 13-40057, 2020 WL 2084893, at *4 (D. Kan. Apr. 30, 2020) (Trial counsel not ineffective for failing to request a competency hearing where defendant "was on a 'drug cocktail' of both 'legally prescribed' and 'illegal controlled substances' before and during trial").

I agree with Dr. Johnson that Dangerfield-Hill's substance use disorder does not render him incompetent to stand trial. (Doc. No. 169); see also United States v. Eapmon, 758 Fed. App'x 370, 372 (6th Cir. 2018) (affirming trial court's finding that a defendant was competent to stand trial after a psychologist reported that he was competent despite substance use disorder diagnosis). At the April 3rd status hearing, Mr. Ibrahim said that he requested a continuance because "trying to prepare the case for trial while [Dangerfield-Hill] is high may affect my ability to prepare the case with him." (Doc. No. 227.) Unfortunately, a continuance would not remedy that difficulty. In any event, Dangerfield-Hill has the capacity to assist in his own defense, particularly when he does not choose to consume illicit substances. Cf. United States v. Battle, 613 F.3d 258, 263 (D.C. Cir. 2010) ("[The evaluating psychologist] viewed [the Defendant's] behavior as volitional, the result of a conscious choice rather than the product of a mental defect [the defendant] could not control. The relevant legal question is not whether appellant will 'assist properly in his defense,' but whether 'he [is] *able* to do" so." (citation omitted)); United States v. Jackson, No. 03-173-04, 2005 WL 2495847, at *8 (E.D. Pa. Oct. 7, 2005) ("While we do not question the sincerity of counsel or his statements regarding Defendant's refusal to cooperate with him, we conclude that Defendant's conduct is volitional and designed to advance his own purposes, however ill-advised. Under the circumstances, we find the Defendant competent to stand trial.").

11

Moreover, Dangerfield-Hill demonstrated for some two years that he is capable of appearing in Court sober. Once again, when he last appeared sober, on January 23, 2025, I advised him as follows:

> THE COURT: I want to make clear to you, I wanted to get you here and put you under oath and make clear to you that you're not going to be able to stop this case from proceeding by coming to Court high. That if you come to Court high again, we're simply going to go ahead. I'm telling you right now, if you continue to get high before you come to Court, I'm simply going to find that you have waived your right to be here not high and to -- we'll get to in a minute whether or not you're going to represent yourself, but whether or not this proceeding can go on with you high. You're not going to stop the proceeding by getting high. You understand that?
>
> THE DEFENDANT: Yes, I understand.

(Doc. No. 213 at 5.)

If, between now and the commencement of trial, Dangerfield-Hill elects to meet with counsel only while high, that is his choice. Cf. United States v. Miller, No. 10-136, 2011 WL 1898251, at *5 (D. Me. May 18, 2011) ("To the extent that the defendant's conduct nonetheless fairly can be characterized as "volitional," he does not suffer from a mental disease or defect that *renders him unable* to assist properly in his defense."); Ferguson v. Crosby, No. 95-573, 2005 WL 8158138, at *7 (S.D. Fla. May 19, 2005) (defendant competent to stand trial when he is "capable of effectively communicating with his attorneys and assisting in the planning of his defense but simply chooses not to do so").

Given the unique circumstance of a detained defendant who continues to appear in Court intoxicated, I have tried to ensure Dangerfield-Hill appears before me sober. I have ordered two competency evaluations; he was found to be competent both times. I have ordered him into a drug treatment program and asked that he be held in the Special Housing Unit, where I thought drugs would be more difficult to obtain. I have asked the Marshals Service to house Dangerfield-Hill in a facility other than the FDC, where he repeatedly obtained drugs. After informing the Parties, I

conveyed my concern to the Chief of the Criminal Division of this District's U.S. Attorney's Office and the Warden of the Philadelphia FDC. (Doc. No. 197 at 9.) Interestingly, two individuals have recently been indicted for smuggling suboxone (Dangerfield-Hill's drug of choice) into the Philadelphia FDC. See Indictment, United States v. DiMaio, 25-cr-110 (E.D. Pa.). These efforts and my admonitions notwithstanding, Dangerfield-Hill has continued to obtain and use drugs and come to Court intoxicated—up to and including on April 3rd.

After I ordered his second evaluation, Dangerfield-Hill insisted that he was competent. (Doc. No. 164 at 3.) When Dr. Johnson found him to be competent, Dangerfield-Hill welcomed the result. (Doc No. 196 at 4.); cf. United States v. Lacey, 719 F. Supp 1201, 1211 (D.N.M. 2024) ("Defendant] is hard pressed to take issue with the Court's finding that he's competent to stand trial since that was his stated position from the very beginning of the case."). I agree with Dr. Johnson that Dangerfield-Hill is competent to consult with his attorney to assist in his defense and also can understand the nature and consequences of the proceedings. Accordingly, I find him competent to stand trial.

Should Dangerfield-Hill sometime in the future urge that he was not competent to go to trial, he has given up that contention (as I noted on January 23, 2025). It is apparent that Dangerfield-Hill continues to use drugs to create an insuperable obstacle to him going to trial. I discredit his testimony that he is not trying to delay trial. (Doc. No. 197 at 8-9.) Moreover, in choosing to compromise his mental state, Dangerfield-Hill has certainly given up the right to have unimpaired cognition at trial. As Judge Ramirez has observed:

> Voluntarily making oneself intoxicated is conceptually no different than a voluntary absence from trial.

Stovall v. Cockrell, 2003 WL 21750707, No. 00-1407, at *14 (N.D. Tex. July 29, 2003), report and recommendation adopted, 2003 WL 22289958 (N.D. Tex. Aug. 21, 2003). If Dangerfield-

13

Hill chooses to attend trial intoxicated, he may not later claim that his condition should have precluded trial altogether. See Johnston v. Texas, 750 F. Supp. 236, 243 (S.D. Tex. 1990) (Defendant who "self-induced her incompetency voluntarily" by taking sedatives and drinking alcohol throughout her trial had "forfeited her right to participate at her trial, despite her incompetence (which the court believes to be synthetic)").

### B. Competency to Proceed Pro Se

In his March 19, 2025 letter, Mr. Ibrahim informed me that Dangerfield-Hill told him the previous day that he again wished to represent himself at trial. I scheduled a status hearing on that request for April 3, 2025. After Dangerfield-Hill failed a drug test on the morning of the hearing, I informed him that I would deny his request to proceed pro se.

At the plea stage, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right,* not the competence to represent himself." Godinez v. Moran, 509 U.S. 389, 399-400 (1993). At trial, however, the Supreme Court has stated:

> [T]he Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under Dusky but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.

Edwards, 554 U.S. at 177–78 (2008) (citing United States v. Dusky, 362 U.S. 402 (1960)); see also United States v. Berry, 565 F.3d 385, 391-92 (7th Cir. 2009) ("Because both state and federal courts are bound to uphold the right to a fair trial (nixing trial of the mentally incompetent), and the right to self-representation, it follows that Edwards applies to the federal courts equally." (citations omitted)).

14

I may "terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." United States v. Noble, 42 F.4th 346, 350 (3d Cir. 2022) (quoting Faretta, 422 U.S. at 832 n.46.) The Circuit cautions that I should "refrain from denying a defendant's initial request to represent himself on this ground where disruption is predicted but has not occurred." United States v. Taylor, 21 F.4th 94, 104 (3d Cir. 2021) (citing Edwards, 554 U.S. 164, 185-86 (Scalia, J., dissenting)).

This was not Dangerfield-Hill's initial request to represent himself, however. On August 30, 2023, after conducting a Peppers colloquy, I permitted Dangerfield-Hill to proceed pro se. He did so until I vacated that Order on January 8, 2025 because I could not be sure he had been sober when he waived his right to counsel or that he could intelligently decide whether to continue to represent himself. Cf. United States v. Wessel, 2 F.4th 1043, 1057 (7th Cir. 2021) (trial judge properly denied competent defendant's waiver of jury trial right after defendant's "volitional misbehavior obstructed her from assuring herself the waiver was knowing, intelligent, and voluntary").

Moreover, Dangerfield-Hill has disrupted these proceedings. This case was on the eve of trial in January of 2024, when I was compelled to grant a continuance because Dangerfield-Hill had stopped taking his prescribed medication and again reported hearing voices. Since last September, I have again been compelled to continue trial when Dangerfield-Hill repeatedly appeared in court while intoxicated. By delaying these proceedings for over a year through this obstructionist conduct, Dangerfield-Hill has forfeited his right to self-representation. See Noble, 42 F.4th at 351 ("The District Court was exceedingly patient in its attempted accommodation and careful in its thorough consideration of the issues, and it did not err by appointing counsel after ten months of obstruction. Defendants forfeit their right to self-representation when they impede

15

proceedings in such a manner."); see also United States v. Butler, 117 F.4th 1309, 1320 (11th Cir. 2024) (Defendant met "serious and obstructionist" standard of Faretta when he had forced several continuances and "upended the district court's docket for nearly a year").

In light of this obstruction, reappointing Mr. Ibrahim as trial counsel is proper, even over Dangerfield-Hill's objection. See United States v. Torres, No. 20-418, 2023 WL 3318567, at *4 (D.N.J. May 9, 2023) ("Where a defendant engages in misconduct after [being afforded] the latitude of self-representation, and the Court terminates his pro se status, that Court may appoint the defendant's standby counsel to represent the defendant, even over the defendant's objection." (citing Faretta, 422 U.S. at 384)).

Moreover, Dangerfield-Hill is exactly the kind of "gray-area defendant" contemplated by the Edwards Court—one who is competent to stand trial, but not competent to conduct his trial defense unless represented:

> Mental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways . . . . In certain instances an individual may well be able to satisfy Dusky's mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel.

Edwards, 554 U.S. at 174-175. As examples of basic trial tasks, the Court offered, inter alia, voir dire, questioning witnesses, and addressing the court and jury. Id. These are precisely the tasks that Dangerfield-Hill would be unable to perform if he is intoxicated. During her testimony at the September 19, 2024 competency hearing, I asked Dr. Johnson if Dangerfield-Hill's volitional intoxication would interfere with his ability to participate in trial tasks. Dr. Johnson replied:

> Anybody [who] is impaired on substances, it will certainly impact their judgment. It will impact their ability to think clearly. Absolutely that is the case.

> And if he's high right now or in subsequent hearings or even at trial, that you know, will definitely negatively impact his ability to think clearly about if he's going to challenge witnesses or how he would participate in his case.

(Doc. No. 196 at 10-11.)

I agree. When Dangerfield-Hill appears to be sober, he is bright and articulate. As I noted on February 19, 2025, however, the difference when he is intoxicated "is night and day." (Doc. No. 212 at 4-5.) At times he can appear alert and receptive, and seconds later he becomes languid and difficult to understand. Significantly, even before he began appearing before me while intoxicated, Dangerfield-Hill expressed concerns to his then-standby counsel that he would have an anxiety attack while presenting his case at trial. (Doc. No. 151.) In these circumstances, he is not competent to represent himself.

The Edwards Court concluded that the trial judge "will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." Edwards, 554 U.S. at 177. I do not lightly make the decision that Dangerfield-Hill has waived his Sixth Amendment right to proceed pro se. Rather, I accept the Edwards Court's admonition that self-representation at trial will not affirm the dignity of a defendant who lacks the capacity to conduct his own defense without counsel. To the contrary, it would aggrieve "the most basic of the Constitution's criminal law objectives, providing a fair trial." Id. at 176-77.

**CONCLUSION**

I find that Dangerfield-Hill refuses to come to Court sober to stop his trial from going forward. I will not allow Dangerfield-Hill to thus abuse Court proceedings by abusing drugs. Were Courts to allow criminal defendants to do so, the result would be calamitous. Although Dangerfield-Hill is competent to stand trial, he is not competent to conduct his own defense unless represented by counsel. Should Dangerfield-Hill later claim he was not competent to go to trial, he has given up that contention. Having chosen to be in an impaired state, he may not obstruct trial on the ground that he is impaired.

Trial will begin as scheduled on April 21, 2025.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
Paul S. Diamond, J.